Sean P. Buckley
**BUCKLEY & THEROUX, LLC**
A LIMITED LIABILITY COMPANY
932 STATE ROAD
PRINCETON, N.J. 08540
(609) 924-9099
Attorneys for Defendant
Imran Bhatti, M.D.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ------------------------------------- : ------------------------- : | Civil Action 07-3638 (AET) |
| SELVE MUSE-FREEMAN, as duly appointed guardian of LINDA MUSE : : : | CIVIL ACTION Medical Malpractice |
| Plaintiff, : vs. : : | |
| ARMEN SIMONIAN, MD; MERCER GASTROENTEROLOGY, PC; IMRAN BHATTI, MD; XYZ CORPORATION; ELLEN WINTER; TRENTON ANESTHESIOLOGY ASSOCIATES; JOHN/JANE DOE 1-10 (fictitiously named unknown physicians, nurses and/or medical personnel who participated in Linda Muse's care); and CAPITAL HEALTH SYSTEM : : : : : : | **MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF Trudy R. Koslow, M.Ed., CRC, CCM, CLCP, (D)ABVE** |

I.   INTRODUCTION

This office represents Defendant, Dr. Imran Bhatti, in the above-captioned matter. With regard to this matter, Dr. Bhatti has retained Trudy R. Koslow, as an expert in Life Care Planning. A true and accurate copy of Ms. Koslow's Curriculum Vitae is attached as Exhibit A.

Presently before Your Honor is Plaintiff's Motion in Limine to Preclude the Testimony of Trudy R. Koslow. In short, Plaintiff argues that Ms. Koslow's testimony is speculative and seeks to preclude Ms. Koslow's testimony pursuant to Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Plaintiff inaccurately argues that Ms. Koslow is not qualified to testify as an expert witness in the areas proffered by the defense and that Ms. Koslow's opinions are not based upon sufficient medical evidence so as to render them unreliable. As discussed more fully below, Ms. Koslow is more than sufficiently qualified to render her opinions in the areas proffered; her opinions are based upon, and supported by, the medical evidence and testimony in this matter. As such, Plaintiff's Motion is meritless and must be denied.

II.   FACTUAL BACKGROUND

Plaintiff alleges that Linda Muse was admitted to Capital Health System - Mercer Campus, under the care of Armen Simonian, M.D., complaining of nausea and vomiting on August 5, 2005. On August 6, 2005, an ultrasound of Ms. Muse's gallbladder was obtained which demonstrated the possible presence of gallstones. On August 8, 2005, Ms. Muse underwent an Endoscopic Retrograde

Cholangiopancreatography (ERCP) performed by Dr. Simonian. Dr. Imran Bhatti was the attending anesthesiologist and Elinor Winter was the CRNA for the ERCP performed on August 8, 2005. Plaintiff alleges that prior to the ERCP Ms. Muse was found to have significantly elevated blood pressure and was given medications to lower same. During the procedure, Ms. Muse experienced a drop in oxygen saturation and blood pressure, which defendants responded to by the administration of a chin lift and continued the ERCP. Ms. Muse subsequently suffered a respiratory event which resulted in a drop in pulse, and respiration rate, followed by respiratory failure and cardiopulmonary arrest. Plaintiff contends that as a result of Defendants' collective failures, Plaintiff suffered a respiratory arrest which resulted in brain damage.

Plaintiff has had Ms. Muse examined to determine the necessary continuing and future care required by Ms. Muse. Plaintiff has offered the medical testimony of Richard Bonfiglio, M.D. who has issued two reports in this case, dated March 2008 and August 2008. Dr. Bonfiglio prepared his first report on March 26, 2008 the same day that he examined Ms. Muse and his second report of August 13, 2008 which was prepared as a result of reviewing additional materials; including the report of Dr. Dara Jamieson.

Plaintiff has also offered the testimony of their own certified life care planner, Terri Patterson. Plaintiff admits that in preparing her evaluation, Ms. Patterson relied upon Dr. Bonfiglio's findings.

Ms. Muse has also been examined on behalf of the Defense. The Defense has offered the testimony of Dara G. Jamieson, M.D., who has conducted an extensive evaluation of Ms. Muse's medical records; performed an independent medical examination of Ms. Muse; reviewed submitted expert reports; and reviewed deposition transcripts. Similarly to that of Plaintiff, the Defense has also offered the testimony of a certified life care planner, Trudy Koslow. A true and accurate copy of Ms. Koslow's Life Care Plan is attached as Exhibit B. As can be seen at page one of Ms. Koslow's Life Care Plan, the document "is based upon a comprehensive assessment, data analysis and research, which provides an organized, concise plan for current and future needs, with associated costs" for Ms. Muse. See Exhibit B. Ms. Koslow completed her Life Care Plan after an extensive review of numerous documents including, but not limited to: medical records; deposition transcripts; and expert reports, including those of Terri Patterson and Richard Bonfiglio. Id. Although not listed in the documents reviewed, Ms. Koslow was served with the expert report of

Dr. Jamieson on August 6, 2008.  Ms. Koslow has not authored a report indicating that Dr. Jamieson's report in any way changed her opinions in this matter.

Plaintiffs' Life Care Planner, Ms. Patterson's plan provides a cost projection for two alternatives: home with supportive services and residential placement.  Ms. Patterson projects an approximate total annual cost for Ms. Muse's continuing and future care requirements, at home with supportive services, to be $541,661; and with residential placement to be $292,397. Ms. Koslow's Life Care Plan does not provide an alternative for home with supportive services because Ms. Koslow does not believe it to be a viable alternative.  Ms. Koslow projects an approximate total annual cost for Ms. Muse's continuing and future care requirements to be $191,516.46 - $252,616.46. As Your Honor can see, the difference between Plaintiff's life care planner's projection and the high end of the projected range of Ms. Koslow is less than $40,000. Plaintiffs' and the Defense's Life Care Planners relied upon the same records and reports in this matter and have reached relatively similar projections.  It is unclear how Plaintiff can argue that Ms. Koslow's opinion is somehow unreliable.

III. <u>LEGAL ANALYSIS</u>

As Plaintiff points out, expert testimony in the Federal Courts is governed by Federal Rule of Evidence 702. The rule is broadly phrased and the fields of knowledge which may be drawn upon are not limited merely to the "scientific" and "technical" but extend to all "specialized" knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by knowledge, skill, experience, training or education. Federal Rule of Evidence 702 requires that expert testimony be the product of reliable principles and methods that are reliably applied to the facts of the case; nothing in Federal Rule of Evidence 702 is intended to suggest that experience alone, or experience in conjunction with other knowledge, skill, training, or education may not prove to be a sufficient foundation for expert testimony. In fact, Federal Rule of Evidence 702 contemplates that an expert may be qualified on the basis of experience alone. <u>See e.g.</u>, <u>United States v. Jones</u>, 107 F.3d 1147 (6th Cir. 1997); <u>Kumho Tire Co. v .Carmichael</u>, 119 S. Ct. 1167, 1178 (1999).

In response to <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) Federal Rule of Evidence 702 was amended and trial judges were charged with the responsibility to exclude unreliable expert testimony.

Daubert set forth a non-exclusive checklist for the courts to use in assessing reliability of expert testimony: whether the expert's technique or theory can be or has been tested; whether the technique or theory has been subject to peer review and publication; the known or potential rate of error of the technique or theory when applied; the existence and maintenance of standards and controls; and whether the technique or theory has been generally accepted in the scientific community. See generally Daubert, 509 U.S. 579. But see e.g., Kannankeril v. Terminix Int', Inc., 128 F. 3d 802 (3d Cir. 1997) (holding that a lack of peer review or publication was not dispositive of whether the expert's opinion was supported by "widely accepted scientific knowledge").

Other factors relevant in determining reliable expert testimony have also been reported. For example, whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation or whether they have developed their opinions expressly for purposes of testifying, see generally Daubert, 509 U.S. 579; whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion, see General Elec. Co. v. Joiner, 522 U.S. 136 (1997); whether the expert has

adequately accounted for obvious alternative explanations, see Claar v. Burlington N.R.R., 29 F. 3d 499 (9th Cir. 1994); whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting, see Sheehan v. Daily Racing Form, Inc., 104 F.3d 940, 942 (7th Cir. 1997); and whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give, see Kumho Tire Co. v. Carmichael, 119 S. Ct. 1167, 1175 (1999).

Despite the trial court's role as a gatekeeper, rejection of expert testimony is the exception rather than the rule and Daubert did not intend the trial court's role to replace the adversarial system. United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi, 80 F.3d 1074, 1078 (5th Cir. 1996). As Daubert notes, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595. When a trial court rules that an expert's testimony is reliable, this does not mean that contradictory expert testimony is unreliable. Federal Rule of Evidence 702 permits testimony that is the product of competing principles or methods in

the same field of expertise. <u>Heller v. Shaw Industries, Inc.</u>, 167 F. 3d 146, 160 (3d Cir. 1999). Obviously, proponents do not have to show to the judge that the opinions of their experts are correct; they only have to show that their opinions are reliable. The evidentiary requirement of reliability is lower than the merits standard of correctness. <u>In re Paoli R.R. Yard PCB Litigation</u>, 35 F.3d 717, 744 (3d Cir. 1994). "Daubert neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance." <u>Ruiz-Troche v. Pepsi Cola</u>, 161 F.3d 77, 85 (1st Cir. 1998).

Federal Rule of Evidence 702 calls for a quantitative rather than qualitative analysis requiring expert testimony be based on sufficient underlying "facts or data." When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in Federal Rule of Evidence 702 on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other. Commentary on 2000 Amendment to Federal Rule of Evidence 702. As such, the fact that Ms. Koslow has submitted a projection relatively similar, but not exactly, to that of

Ms. Patterson is of no consequence. The issue of whether any expert's opinion is accepted is entirely up to the trier of fact.

Plaintiff argues that Ms. Koslow is not qualified to offer a life care plan in this matter. Counsel's argument is nonsensical. Ms. Koslow has been retained in this matter for the express purpose of preparing a life care plan. Ms. Koslow is a certified, licensed, Life Care Planner. See Exhibit A. Ms. Koslow is also certified in rehabilitation counseling and is certified as a case manager and rehabilitation provider. Id. Ms. Koslow is a Diplomat of the American Board of Vocational Experts. Id. Ms. Koslow is capable to provide life care planning, comprehensive case management, and brain injury rehabilitation. Id. Furthermore, Ms. Koslow has provided sworn expert witness testimony, in the area of expertise proffered, on over one hundred occasions. Id.

Plaintiff seems to argue that Ms. Koslow is not qualified to render an opinion in this matter because she does not have a R.N. license as does Plaintiff's life care planner, Ms. Patterson. Importantly, however, neither Ms. Patterson nor Ms. Koslow has been retained in this matter to provide an expert report in the area of nursing. Indeed, Ms. Koslow would not be qualified to render an

opinion at to a nurse.  However, Ms. Koslow is offering her opinion as to Ms. Muse's life care plan, something she is more than qualified to do.

Plaintiff has included portions of Ms. Koslow's deposition testimony where she states that she is not a "medical professional".  <u>See</u> Plaintiff's exhibit C.  Again, Ms. Koslow has not been retained to offer a medical opinion.  Plaintiff's counsel conveniently omits portions of Ms. Koslow's deposition testimony evidencing her ability to offer an expert opinion on Ms. Muse's life care plan.  A true and accurate copy of Ms. Koslow's deposition testimony has been attached as Exhibit C.  As explained in her deposition, Ms. Koslow assesses patients' needs and future needs.  <u>See</u> Exhibit C at 30:14-22.  Ms. Koslow may not be qualified to render medical treatment, but she "can certainly do some things medically-related" including making recommendations as to what tests may be required for a patient for diagnostic purposes.  <u>Id</u>. at 31:2-19.  Obviously, Ms. Koslow did not make a medical evaluation of Ms. Muse, she made a life care planning evaluation.  <u>Id</u>. at 34:12-17.  Ms. Koslow's evaluation, among other things, appropriately considered Ms. Muse's condition, medications, physicians, physical therapy, occupational therapy, the facility cost, what the per diem expense included, what

expenses are extra, what equipment is used, what equipment is covered, the supplies needed, and the care needed. Id. at 79:9-18; 80:6-21.

Ms. Koslow's opinions are supported by the very same medical records and reports as Plaintiffs' life care planner. Ms. Koslow interacted with the nurses currently providing care to Ms. Muse. While Ms. Koslow disagrees with Ms. Patterson that it may be appropriate for Ms. Muse to receive home care, the two life care planners' calculations and projections are relatively similar.

## IV. CONCLUSION

Plaintiff contention that Ms. Koslow is not qualified to render an opinion on Ms. Muse's life care plan is ludicrous. Undoubtedly, one does not need to possess a medical or nursing degree to prepare a life care plan. Ms. Koslow's opinions are supported by the very same medical records and testimony as that of Plaintiffs' own life care planner and is certainly "fit", that is of assistance to the trier of fact. Ms. Koslow's opinions are based squarely upon the medical records and her years of experience as a certified life care planner. As such, Plaintiff's Motion to preclude the testimony of Ms. Koslow must be denied.

        Respectfully submitted,

        **Buckley & Theroux, LLC**
        Attorneys for Defendant,
        Imran Bhatti, M.D.


By: *Michael P. Opacki*
     Michael P. Opacki, Esq.

DATED:  January 26, 2009

Sean P. Buckley
**BUCKLEY & THEROUX, LLC**
A LIMITED LIABILITY COMPANY
932 STATE ROAD
PRINCETON, N.J. 08540
(609) 924-9099
Attorneys for Defendant
Imran Bhatti, M.D.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SELVE MUSE-FREEMAN, as duly appointed guardian of LINDA MUSE | Civil Action 07-3638 (AET) |
| Plaintiff, | CIVIL ACTION<br>Medical Malpractice |
| vs. | |
| ARMEN SIMONIAN, MD; MERCER GASTROENTEROLOGY, PC; IMRAN BHATTI, MD; XYZ CORPORATION; ELLEN WINTER; TRENTON ANESTHESIOLOGY ASSOCIATES; JOHN/JANE DOE 1-10 (fictitiously named unknown physicians, nurses and/or medical personnel who participated in Linda Muse's care); and CAPITAL HEALTH SYSTEM | **CERTIFICATION OF FILING AND SERVICE** |

I certify that one copy of the within Memorandum of Law in Opposition to Plaintiff's Motion in Limine to Preclude the Testimony of Trudy Koslow, and Exhibits were filed electronically with the Clerk of The United States District Court for the District of New Jersey and one copy was sent via Regular Mail to:

Honorable Anne E. Thompson, United States Judge for the
District of New Jersey
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthoue
402 East State Street, Room 2020
Trenton, NJ 08608

Carol A. Shelly, Esq.
Mellon, Webster & Shelly
87 north Broad Street
Doylestown, PA 18901

Neal Schonhaut, Esq.
Archer & Greiner, P.C.
700 Alexander Park, Suite 102
Princeton, NJ 08540

Maura Waters Brady, Esq.
Vasios, Kelly & Strollo, P.A.
2444 Morris Avenue
Union, NJ 07083

Lora M. Foley, Esq.
Parker McCay, P.A.
Three Greentree Centre
7001 Lincoln Drive West
P.O. Box 974
Marlton, NJ 08053

Rudolph Socey, Esq.
Lenox, Socey, Wilgus, Formidoni, Brown, Giordano & Casey
3131 Princeton Pike
Lawrenceville, NJ 08648

Craig S. Combs, Esq.
Giblin & Combs
P.O. Box 1297
10 Madison Avenue
Morristown, NJ 07962

    I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

                    **Buckley & Theroux, LLC**
                    Attorneys for Defendant,
                    Imran Bhatti, M.D.


By: _Michael P. Opacki_____
     Michael P. Opacki, Esq.

DATED:  January 26, 2009